UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BRANDON ANDREW BARKER,

        Plaintiff,

v.                                Case No:  6:15-cv-159-Orl-CM

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____

## OPINION AND ORDER

Plaintiff Brandon Andrew Barker appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for adult child's insurance benefits and supplemental security income ("SSI"). For the reasons discussed herein, the decision of the Commissioner is reversed, and this matter is remanded pursuant to 42 U.S.C. § 405(g), sentence four.

### I.   Issues on Appeal

Plaintiff raises three issues on appeal: (1) whether the Administrative Law Judge ("ALJ") properly relied upon the vocational expert ("VE") to determine that Plaintiff could perform other work; (2) whether the ALJ erred by failing to evaluate whether Plaintiff's impairment met or equaled Listing 12.05, Intellectual Disability; and (3) whether the ALJ properly weighed the opinions of Dr. Carolyn Geis.

## II.    Procedural History and Summary of the ALJ's Decision

Plaintiff filed an application for adult child's insurance benefits and SSI alleging a disability that began on February 8, 2011.[1]   Tr. 122, 129.   The Social Security Administration denied his claim initially and upon reconsideration.   Tr. 101, 115.   Plaintiff requested and received a hearing before ALJ John D. Thompson, Jr., on December 6, 2012 during which he was represented by an attorney.   Tr. 920-961.   Plaintiff testified at the initial hearing.   *Id.*   A supplemental hearing was held thereafter on June 4, 2013.   Tr. 962-1011.   Plaintiff's attorney appeared at the supplemental hearing, but Plaintiff waived his right to be present at the hearing. Tr. 15.   At the supplemental hearing, clinical psychologist, Jeffrey Fremont, Ph.D., and VE Charles K. Heartsill both testified.   Tr. 962-1011.   The ALJ issued an unfavorable decision on August 2, 2013.   Tr. 15-25.

The ALJ first determined that Plaintiff had not attained the age of 22 as of February 8, 2011, the corrected alleged onset date.   Tr. 17.   At step one of the sequential evaluation process, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since February 8, 2011.   Tr. 17.   At step two, the ALJ determined that Plaintiff has the following severe impairments: a history of gunshot wounds with status post lung resection; a history of possible PTSD, which is poorly supported; a history of polysubstance abuse (in remission after July 2011) and a history of tobacco abuse.   Tr. 17-18.   At step three, the ALJ concluded that Plaintiff

---

[1] Plaintiff's applications state that the alleged onset date was February 8, 2010, but Plaintiff's attorney clarified at the hearing that the correct date is February 8, 2011.   Tr. 15.

"does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 18. The ALJ elaborated that, "[t]he severity of the [Plaintiff's] mental impairments, considered singly and in combination, do not meet or medically equal the criteria of Listings 12.04, 12.06 or 12.09." *Id.*

Taking into account the effects from all of Plaintiff's impairments, the ALJ determined that Plaintiff has the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). In the course of a normal eight-hour workday, the [Plaintiff], with reasonable and appropriate breaks, can sit, stand and walk for at least six hours each. The [Plaintiff] can occasionally (up to one-third of the workday) lift and/or carry 20 pounds and more frequently (up to two-thirds of the workday) 10 pounds or less. Within the established weight limitations, the [Plaintiff] can push and/or pull objects and operate hand/arm or foot/pedal controls with no limitation of function. With regard to his ability to perform postural activities, the [Plaintiff] can occasionally climb ramps and stairs though he cannot climb ladders, ropes or scaffolding. The [Plaintiff] can perform postural activities, including balancing, stooping, crouching, crawling and kneeling on a frequent basis. Within the defined weight limits, in terms of the ability to use his upper extremities, the [Plaintiff] can reach in all directions and handle, finger and feel with no limitations. There are no limitations of function in the [Plaintiff's] abilities to see, speak, or hear. From an environmental standpoint, the [Plaintiff] is limited to working in a temperature-controlled work environment without exposure to temperature extremes. Mentally, the [Plaintiff] is able to undertake simple rote and repetitive type activities in response to oral directives. He cannot be required to do any significant amount of reading or writing and the job should not require the meeting of a strict production goal or quota. Additionally, the job should be one that basically has no change in work activities performed from one day to the next so that work demands and/or job tasks are predominately fixed in nature. With regard to ability to interact with others, the [Plaintiff] is able to do so on an occasional basis or less. In terms of interaction with co-workers and supervisors, the [Plaintiff] can interact occasionally and at least occasionally with members of the general public. The [Plaintiff] should not be asked to do jobs requiring him to resolve and/or handle problems

of others and is better suited for jobs requiring him to work with things rather than people.

Tr. 19-20.   The ALJ found that Plaintiff's medically determinable impairments reasonably could be expected to cause the alleged symptoms, but his statements concerning the intensity, persistence and limiting effects of the symptoms are not fully credible.   Tr. 23.   The ALJ found that Plaintiff has no past relevant work ("PRW") but there are many unskilled jobs that exist in the national economy that Plaintiff can perform.   Tr. 24.   Thus, the ALJ found that Plaintiff is not disabled and denied his claim.   Tr. 25.

Following the ALJ's decision, Plaintiff filed a request for review by the Appeals Council, which was denied on December 3, 2014.   Tr. 7-9.   Accordingly, the August 2, 2013 decision is the final decision of the Commissioner.   Plaintiff filed an appeal in this Court on February 3, 2015.   Doc. 1.

### III.   Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.   42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).   The Commissioner has established a five-step sequential analysis for evaluating a claim of disability.   *See* 20 C.F.R. §§ 404.1520; 416.920.   The Eleventh Circuit has summarized the five steps as follows:

(1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an

> impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (citing 20 C.F.R. §§ 416.920(a)(4), (c)-(g), 416.960(c)(2); *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011)). The claimant bears the burden of persuasion through step four; and, at step five, the burden shifts to the Commissioner. *Id.*; *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

The Eleventh Circuit recently has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings." *Hunter v. Soc. Sec. Admin., Comm'r,* 808 F.3d 818, 822 (11th Cir. 2015)

(*citing Black Diamond Coal Min. Co. v. Dir., OWCP,* 95 F.3d 1079, 1082 (11th Cir. 1996). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Lacina v. Commissioner,* 2015 WL 1453364, at *2 (11th Cir. 2015) (citing *Grant v. Richardson,* 445 F.2d 656 (5th Cir.1971)).

## IV.   Discussion

### a. Whether the ALJ properly relied upon the VE to determine that Plaintiff could perform other work

Plaintiff argues that the ALJ's decision that Mr. Barker is disabled is contrary to Social Security Rulings ("SSRs") 85-15 and 96-9p when the ALJ found that Plaintiff had a marked impairment in adjusting to changes in routine work setting. Doc. 25 at 1. Plaintiff argues that given the substantial evidence in the record, SSRs 85-15 and 96-9p required a finding that he is disabled. *Id.* at 20. The Commissioner

responds that neither SSR 85-15 nor 96-9p technically apply to Plaintiff's case; but even if they do, they do not mandate a finding of disability.   Doc. 26 at 5.

"SSRs are agency rulings 'published under the authority of the Commissioner of Social Security and are binding on all components of the Administration.'" *Thornton v. Comm'r of Social Security*, 597 F. App'x 604, 610 (11th Cir. 2015) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990)).   "SSRs 'do not have the force and effect of the law or regulations but are to be relied upon as precedents in determining other cases where the facts are basically the same.'"   *Id.* (quoting *Heckler v. Edwards*, 465 U.S. 870, 873 n.3 (1984)).   Although SSRs are not binding on the court, courts accord them deference.   *Id.* (citing *Fair v. Shalala*, 37 F.3d 1466, 1469 (11th Cir. 1994)).   Simply because a ruling will justify a finding of disabled does not mean that the Commissioner must find that a claimant is disabled.   *Id.* at 611.

Social Security Ruling 85-15 discusses the Medical Vocational Rules as a framework for evaluating solely nonexertional impairments.   SSR 85-15.   Social Security Ruling 83-14 discusses when a person's exertional capacity is compromised by nonexertional impairments.   SSR 85-15 (citing SSR 83-14).   Ruling 85-15 provides that "[t]he basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in routine work setting."   *Id.*   A substantial loss in any of these abilities would *justify* a finding of disability because it would severely limit the potential occupational base.   *Id.* (emphasis added).

Social Security Ruling 96-9p discusses the implications of an RFC for less than a full range of sedentary work.   SSR 96-9p.   The ruling states that an RFC of less than a full range of sedentary work reflects very serious limitations and is very rare, but it does not necessarily equate to a finding that a person is disabled.   *Id.* Additionally, a substantial loss of the ability to meet any one of several basic mental work-related demands, as listed in SSR 85-15, will substantially erode the unskilled sedentary occupational base and would *justify* a finding a disability.   *Id.* (emphasis added).

Plaintiff argues that given the substantial evidence in the record, SSRs 85-15 and 96-9p require a finding that he is disabled.   Doc. 25 at 2.   He contends that every treating or examining source who performed a mental RFC analysis concluded that Plaintiff has a marked limitation in his ability to deal with routine changes at work.   *Id.*   Plaintiff acknowledges that the ALJ appears to have considered this evidence because the ALJ found that Plaintiff could only perform a job "that basically has no change in work activities from one day to the next so that work demands and/or job tasks are predominately fixed in nature."   *Id.*, Tr. 18.   Because the ALJ made this finding, Plaintiff contends that the ALJ could not rely upon the testimony of the VE that there were jobs in the economy that Plaintiff could perform.   Doc. 25 at 21. Plaintiff references SSR 00-4p, which states, "SSA adjudicators may not rely on evidence provided by a VE, VS, or other reliable source of occupational information if that evidence is based on underlying assumptions or definitions that are inconsistent with our regulatory policies or definitions."   *Id.* (quoting SSR 00-4p).

First, the Court finds that Plaintiff's reliance on SSRs 85-15 and 96-9p is misplaced because those rulings do not directly apply to this case.   As noted by the Commissioner, SSR 85-15 pertains solely to the use the Medical Vocational Rules as a framework for evaluating non-exertional impairments.   Doc. 26 at 5, SSR 85-15. Where, as here, Plaintiff's exertional capacity is compromised by a non-exertional impairment, SSR 83-14, not SSR 85-15, would apply.   SSR 83-14.   Moreover, SSR 96-9p discusses the implications of a RFC for less than a full range of sedentary work. SSR 96-9p.   Here, the ALJ found that Plaintiff has the RFC to perform light work with certain restrictions.   Tr. 19-20.   Thus, SSR 96-9p also would not apply.

Even if SSRs 85-15 and 96-9p applied to Plaintiff's case, the Court finds the ALJ was entitled to rely upon the testimony of the VE that there were jobs existing in significant numbers in the economy in which Plaintiff could perform.   In *Thornton*, the Eleventh Circuit addressed a similar argument.   597 F. App'x at 609-11.   There, the plaintiff argued that all unskilled work requires the ability to cooperate with co-workers; and, because the ALJ concluded that she was unable to do this, plaintiff was disabled as a matter of law pursuant to SSRs 85-15, 96-8p and 96-9p.   *Id.* at 610.   The plaintiff argued that the VE's testimony conflicted with SSRs and thus the Commissioner could not rely upon the VE's testimony at step five. *Id.* at 611.   The court held that the SSRs cited do not require a finding that the plaintiff was disabled.   *Id.*   The court stated, "the fact that a finding of disability may be justified, does not mean that a finding of disability is required."   *Id.*   The court reasoned that because there was no conflict with Social Security policies, the

Commissioner was entitled to rely upon the VE's testimony. *Id.* Here, there is no conflict between the Social Security regulations and policies and the testimony of the VE. *See id.* Accordingly, the Court finds that the ALJ did not err when he found Plaintiff could perform other work.

### b. Whether the ALJ erred by failing to evaluate if Plaintiff's impairment met or equaled Listing 12.05, Intellectual Disability

Next, Plaintiff argues that the ALJ failed to properly evaluate whether his impairment met or equaled Listing 12.05, for intellectual disability. Doc. 25 at 21. Plaintiff states that his counsel argued at the supplemental hearing and in a memorandum that Plaintiff met or equaled Listing 12.05; and, while the ALJ considered Listings 12.04, 12.06 and 12.09, he did not address Listing 12.05. *Id.* at 22. Plaintiff contends that substantial evidence supports a finding of disability under that listing. *Id.* The Commissioner responds that Plaintiff failed to prove his impairment met or equaled 12.05. Doc. 26 at 6. Additionally, although the Commissioner concedes that the ALJ did not expressly discuss Listing 12.05, she contends that this omission is harmless error because the record simply does not support a finding that Plaintiff's impairment satisfied all of the criteria of Listing 12.05. *Id.*

The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. Tr. 18. In making this determination, the ALJ considered the criteria of Listings 12.04 (affective disorders), 12.06 (anxiety-related disorders) and 12.09 (substance addiction disorders). *Id.*

The ALJ did not expressly consider whether Plaintiff met or equaled Listing 12.05 for intellectual disability.

The listings describe impairments that the Commissioner considers severe enough to prevent a person from doing "any gainful activity, regardless of his or her age, education, or work experience." *See* 20 C.F.R. §§ 404.1625(a), 416.925(a). If an adult's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. . . ." *Bowen v. Yuckert,* 482 U.S. 137, 141 (1987), *cited in Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). The Eleventh Circuit has described how the standard is met or equaled:

> In order to *meet* a listing, the claimant must (1) have a diagnosed condition that is included in the listings and (2) provide objective medical reports documenting that this condition meets the specific criteria of the applicable listing and the duration requirement. A diagnosis alone is insufficient. [] In order to *equal* a listing, the medical findings must be at least equal in severity and duration to the listed findings.

*Wilkinson on Behalf of Wilkinson*, 847 F.2d at 662 (citing 20 C.F.R. § 416.925(c)-(d)). The burden of establishing that a claimant's impairments meet or equal a listing rests with the claimant, who must produce specific medical findings that satisfy all the criteria of a particular listing. 20 C.F.R. § 404.1520(a)(4).

If Plaintiff contends that an impairment meets a listing, as he does here (Doc. 25 at 22-21), he bears the burden of "present[ing] specific medical findings that meet the various tests listed under the description of the applicable impairment." *Wilkinson ex rel. Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987). In doing so, Plaintiff must have a diagnosed condition that is included in the listings. *Id.*

Diagnosis of a listed impairment, however, is not enough; as the claimant must also

provide objective medical reports documenting that her impairment meets the

specific criteria of the applicable listing.   *Id.*; *accord Wilson v. Barnhart*, 284 F.3d

1219, 1224 (11th Cir. 2002).   Further, "[a]n impairment that manifests only some of

[the specific] criteria [of the applicable impairment], no matter how severely, does not

qualify."   *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

The introductory material to the mental disorders listings clarifies Listing

12.05, stating:

> The structure of the listing for intellectual disability (12.05) is different
> from that of the other mental disorders listings.   Listing 12.05 contains
> an introductory paragraph with the diagnostic description for
> intellectual disability.   It also contains four sets of criteria (paragraphs
> A through D).   If your impairment satisfies the diagnostic description
> in the introductory paragraph and any one of the four sets of criteria,
> [the Commissioner] will find that your impairment meets the listing.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A.   Listing 12.05 provides, that a claimant

is disabled if he or she meets the following criteria:

> 12.05 Intellectual disability: intellectual disability refers to significantly
> subaverage general intellectual functioning with deficits in adaptive
> functioning initially manifested during the developmental period; i.e.,
> the evidence demonstrates or supports onset of the impairment before
> age 22.
>
> The required level of severity for this disorder is met when the
> requirements in A, B, C, *or* D are satisfied.
>
> A. Mental incapacity evidenced by dependence upon others for personal
> needs (e.g., toileting, eating, dressing, or bathing) and inability to follow
> directions, such that the use of standardized measures of intellectual
> functioning is precluded;
>
> OR

B. A valid verbal, performance, or full scale IQ of 59 or less;

OR

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

OR

D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

1.  Marked restriction in activities of daily living; or

2.  Marked difficulties in maintaining social functioning; or

3.  Marked difficulties in maintaining concentration, persistence, or pace; or

4.  Repeated episodes of decompensation, each of extended duration.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05 (emphasis added).   Accordingly, in order to meet Listing 12.05, "a claimant must at least[:] 1) have significantly subaverage general intellectual functioning; 2) have deficits in adaptive [functioning]; and 3) have manifested deficits in adaptive [functioning] before age 22."   *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997); 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. Additionally, a claimant must meet one of the four sets of criteria found in 12.05A, B, C, or D, in order to show that his or her impairments are severe enough to meet or equal Listing 12.05.   20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A).

In *Hodges v. Barnhart*, the Eleventh Circuit held that "there is a presumption that mental retardation[2] is a condition that remains constant throughout life" and

---

[2] The Court notes that currently Listing 12.05 uses "Intellectual disability" in place of "Mental retardation," amended on August 1, 2013.   *See* 78 Fed. Reg. 46,499, 46,501.   The

would apply to a claimant since the onset date of disability.  276 F.3d 1265, 1266 (11th Cir. 2001).  In *Hodges*, the plaintiff acknowledged the lack of I.Q. evidence before the age of 22, but the court agreed with the plaintiff that "I.Q. tests create a rebuttable presumption of a fairly constant I.Q. throughout her life."  *Id.* at 1268. The court also noted that "a claimant meets the criteria for presumptive disability under Listing 12.05(c) when the claimant presents a valid I.Q. score of 60 to 70 and evidence of additional mental or physical impairment."  *Id.* at 1269.  However, "a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior."  *Id.* (citing *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986)).

Here, medical records from Learning Rx indicate that on September 21, 2012, Plaintiff had an IQ score of 55.  Tr. 265.  The Commissioner, however, questions the validity of the score because the report does not contain a narrative and does not indicate whether the score is consistent with Plaintiff's development and his degree of functional limitation.  Doc. 26 at 12.  The Commissioner states that results of intelligence tests are only part of the overall assessment and that the narrative report should comment on whether the scores are considered valid and consistent with the developmental history and degree of functional limitation.  *Id.* (citing 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00D6a).  The Commissioner acknowledges, however, that an ALJ may not be able to reject an IQ score for lack of a narrative report because the report's lack of comment could factor into the ALJ's analysis.  *Id.* (citing *Frame*

---

listing, however, has not substantively changed.  *Id.*

*v. Comm'r of Social Security*, 596 F. App'x 908, 913 (11th Cir. 2015) (holding that substantial evidence supported the ALJ's conclusion that the plaintiff did not meet Listing 12.05C when the ALJ found the plaintiff's IQ score invalid).

In the present case, the ALJ made no findings regarding the validity of Plaintiff's IQ score from LearningRx.   It is unclear from the record whether the ALJ even considered the IQ score or report at all when making his findings.   The ALJ relied heavily upon the testimony of psychological expert, Dr. Jeffrey Freemont.   Tr. 18.   The ALJ stated that Dr. Freemont determined Plaintiff's impairments do not meet or medically equal the requirements for *any* impairment in the listing.   *Id.* The ALJ specifically found that Plaintiff did not meet the criteria for 12.04, 12.06 or 12.09.   *Id.*   The ALJ stated that his finding was consistent with the testimony of Dr. Freemont.   *Id.*   Additionally, the ALJ commented that neither Plaintiff nor his attorney suggested facts to establish an impairment that meets or equals any listing, either singly or in combination.   *Id.*

Dr. Freemont testified during the supplemental hearing that he reviewed records dating back to 2002, including a January 29, 2013 psychological report from Dr. J. Jeff Oatley, Ph.D., finding that Plaintiff had a verbal score of 66, a performance score of 65, and a full scale IQ score of 60 on the Wechsler Adult Intelligence Scale, fourth edition.   Tr. 883-87, 968.   Dr. Oatley noted in his report, however, that the testing was a "significant underestimate" because Plaintiff appeared heavily sedated and fell asleep during the examination.   Tr. 886.   Dr. Freemont testified that based on the evidence in the file, Plaintiff did not meet Listings 12.04, 12.06 or 12.09.   Tr.

973-74.   He stated that those were the only three listings he was able to consider, and no other listings were implicated.   Tr. 974.   Plaintiff's counsel then asked Dr. Freemont about the report from LearningRx indicating that Plaintiff had an IQ score of 55 to determine whether Listing 12.05 would be implicated.   Tr. 982-84.   Dr. Freemont conceded that he did not have the report from LearningRx and therefore had not reviewed it.   Tr. 984.   The only IQ scores Dr. Freemont reviewed were from Dr. Oatley.   *Id.*   Dr. Freemont testified that in order for him to evaluate Listing 12.05, he would have the Oatley test re-administered to Plaintiff to address the concern about polysubstance abuse.   *Id.*   Dr. Freemont never made an explicit finding as to whether Plaintiff's impairments met or medically equaled Listing 12.05. *Id.*   Thus, to the extent the ALJ relied upon Dr. Freemont's testimony that Plaintiff's impairments did not meet or medically equal any listing, including 12.05, that finding is unsupported by substantial evidence because Dr. Freemont never expressly made a finding as to Listing 12.05.

The Commissioner asks the Court to hold that the ALJ implicitly found that Plaintiff's impairments did not meet Listing 12.05 because substantial evidence supports that finding.   Doc. 26 at 13-14.   The Court acknowledges that an ALJ *may* implicitly find that a claimant does not meet a listing without committing reversible error.   *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986); *Keane v. Comm'r of Soc. Sec.*, 205 F. App'x 748, 750 (11th Cir. 2006).   Under the circumstances of this case, however, the Court finds that the ALJ's decision demonstrates no such implicit finding.   The ALJ failed to even address Plaintiff's IQ scores, and the ALJ made no

findings regarding whether Plaintiff suffered from deficits in adaptive functioning.[3]

Moreover, to the extent the ALJ's conclusion is based upon the testimony of Dr. Freemont, Dr. Freemont did not make any explicit findings regarding whether Plaintiff meets Listing 12.05.

Because it is unclear from the record what the ALJ relied upon when determining that Plaintiff's impairments failed to meet any listing and whether the ALJ considered Listing 12.05, the decision is not supported by substantial evidence. Thus, the Court finds that remand is appropriate for the ALJ to consider whether Plaintiff meets Listing 12.05.   The Court will not assume that the ALJ found that Plaintiff did or did not meet the requirements of the listing.   *See Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (the court will not "affirm simply because some rationale might have supported the ALJ's conclusion.").   In similar situations, courts in this circuit, including this Court, have remanded matters to the Commissioner for further proceedings.   *See Johnson v. Colvin*, Case No. 3:12-cv-17-J-JRK, 2013 WL 1175258, at *5-6 (M.D. Fla. Mar. 21, 2013) (remanding, in part, because it was not entirely clear whether the ALJ found claimant did not meet Listing 12.05C because of a lack of deficits in adaptive functioning or a lack of additional impairments imposing additional significant work-related functional limitations); *Carroll v. Astrue*, 2009 WL 1708073, at *1-2 (M.D. Ala. June 17, 2009) (remanding, in part,

---

[3] The SSA's Program Operations Manual System ("POMS") states that the phrase "adaptive functioning" refers to "the individual's progress in acquiring mental, academic, social and personal skills as compared with other unimpaired individuals of his/her same age."   POMS DI 24515.056(D)(2).   *See also Talavera v. Astrue*, 697 F.3d 145, 153 (2d Cir. 2012) (explaining that the phrase "adaptive functioning" in Listing 12.05 refers to an individual's ability to cope with the challenges of ordinary life).

because the ALJ did not explicitly address whether claimant met the requirements of the introductory paragraph of Listing 12.05); *Gorden v. Colvin*, Case No. 2:13-cv-369-SPC-CM (M.D. Fla. Aug. 18, 2014) (same).   Likewise, the Court will do so here.

> c.   *Whether the ALJ properly weighed the opinions of Dr. Carolyn Geis*

Plaintiff alleges that the ALJ erred by giving little weight to Dr. Carolyn Geis, Plaintiff's treating neurologist, and failed to articulate good cause for according such weight.   Doc. 25 at 23.   The Commissioner responds that the ALJ properly evaluated the opinions of Dr. Geis because, although Dr. Geis provided an opinion on Plaintiff's mental limitations, the ALJ noted that Dr. Geis is a neurologist, not a mental health professional.   Doc. 26 at 16.

Under the regulations, the ALJ must weigh any medical opinion based on the treating relationship with the claimant, the length of the treatment relationship, the evidence the medical source presents to support his opinion, how consistent the opinion is with the record as a whole, the specialty of the medical source and other factors.   *See* 20 C.F.R. § 404.1527(c)(2)-(6).   Opinions of treating sources usually are given more weight because treating physicians are the most likely to be able to offer detailed opinions of the claimant's impairments as they progressed over time and "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. § 404.1527(c)(2).   If the opinion of a treating physician as to the nature and severity of a claimant's impairment is supported by acceptable medical evidence and is not inconsistent with other substantial evidence of record, the treating physician's

opinion is entitled to controlling weight. *Id.* By contrast, "because nonexamining sources have no examining or treating relationship with [a plaintiff], the weight [the Social Security Administration] will give their opinions will depend on the degree to which they provide supporting explanations." 20 C.F.R. § 416.927(c)(3). Any medical source opinion may be discounted when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a whole. SSR 96-2p; *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004).

Dr. Geis initially treated Plaintiff on February 22, 2011 after he was admitted to Halifax Medical Center for gunshot wounds to the chest. Tr. 455-56. Dr. Geis treated Plaintiff on an ongoing basis through at least May 20, 2013. Tr. 918-19. On October 9, 2012, Dr. Geis completed a mental RFC assessment and concluded that Plaintiff had marked limitations in his ability to remember locations and work-like procedures, understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, respond appropriately to changes in the work setting, and travel in unfamiliar places or use public transportation. Tr. 834-35.

The ALJ gave Dr. Geis' opinions in her RFC assessment little weight because she is a neurologist and not a mental health specialist. Tr. 22. He also found that the RFC was not supported by Dr. Geis' progress notes or by the other chart notations offered by Dr. Kathryn Fraser, Plaintiff's treating mental health provider. *Id.*

One of the factors an ALJ can consider when determining the weight to provide to a medical opinion is the specialty of the doctor.   *See* 20 C.F.R. § 404.1527(c)(2)-(6). Here, the ALJ considered that Dr. Geis was a neurologist rather than a mental health specialist when he reduced the weight of her opinion.   Tr. 22.   Plaintiff argues that the ALJ erred when he concluded that Dr. Geis is a neurologist, when in fact she is a physical medicine and rehabilitation physician, specializing in brain injury medicine. Doc. 25 at 23.   The Commissioner responds, and the Court agrees, that the misidentification by the ALJ is harmless error because the fact remains that Dr. Geis is not a mental health professional.   Doc. 26 at 16.   Additionally, on numerous occasions, Dr. Geis recommended that Plaintiff follow up with Dr. Fraser, a mental health provider, further evidencing that Dr. Geis is not a mental health provider. Tr. 437, 658, 750.

The ALJ also reduced Dr. Geis' opinions because they were not consistent with her progress notes or the records of Dr. Fraser.   Tr. 22.   Dr. Geis' treatment notes regarding Plaintiff's mental status indicate that Plaintiff was able to immediately recall three out of three items, two out of three items were recalled after a delay, and three out of three were recalled after a delay with cues.   Tr. 751.   Additionally, both Dr. Geis and Dr. Fraser indicated that Plaintiff expressed an interest in returning to school.   Tr. 800, 823.   The RFC provided by Dr. Geis was inconsistent with these reports.   Thus, the ALJ properly reduced the weight of Dr. Geis' opinions.   Because the Court, however, finds that remand is appropriate, the Court also will direct the ALJ to reevaluate the opinions and weight accorded to Dr. Geis.

## V.    Conclusion

Upon review of the record, the undersigned concludes that the ALJ failed to apply the proper legal standards, and thus his determination that the Plaintiff is not disabled is not supported by substantial evidence.

ACCORDINGLY, it is hereby

**ORDERED:**

1.    The decision of the Commissioner is **REVERSED** and this matter is **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for the Commissioner to:

> A.  determine based upon all the evidence whether Plaintiff meets the requirements of disability under 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.05;
>
> B.  reevaluate the weight accorded to Dr. Geis;
>
> C.  make any other determinations consistent with this Opinion and Order, or in the interests of justice.

2.    The Clerk of Court is directed to enter judgment in favor Plaintiff, Brandon Andrew Barker, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 26th day of March, 2016.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record